# United States Court of Appeals
## For the First Circuit

No. 05-2517

KENNETH B. BOYD AND MARIE L. BOYD,

Petitioners, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent, Appellee.

ON APPEAL FROM THE ORDER OF
THE UNITED STATES TAX COURT

Before

Boudin, Chief Judge,
Coffin, Senior Circuit Judge,
and Selya, Circuit Judge.

Peter L. Banis for appellants.
Teresa E. McLaughlin, Attorney, Tax Division, with whom Eileen
J. O'Connor, Assistant Attorney General, and Annette M. Wietecha,
Attorney, Tax Division, were on brief for appellee.

June 13, 2006

**COFFIN**, **Senior Circuit Judge**.  This case invites us to consider whether 1998 revisions to the United States Tax Code eliminated the historical distinction between a "levy" and an "offset" and require the same procedural protections for both.  The government traditionally has been thought to possess a common law right, as a creditor, to "offset," or "set off," funds owed to a taxpayer and thus held by the government – without prior notice – "to reduce the taxpayer's outstanding tax liability,"  United States ex rel. P.J. Keating Co. v. Warren Corp., 805 F.2d 449, 451-52 & n.3 (1st Cir. 1986); see also Hankin v. United States, 891 F.2d 480, 483 (3rd Cir. 1989).  A "levy," by contrast, involves a formal notice-and-hearing process governed by statute in which the government typically seeks to seize property not already within its control to satisfy a taxpayer's liability. See Belloff v. Comm'r, 996 F.2d 607, 615 (2d Cir. 1993); Hankin, 891 F.2d at 483.

Appellants, a husband and wife, assert that the Internal Revenue Service ("IRS") improperly failed to utilize the statutory levy process when it sought to offset their joint income tax refund against a prior business-related tax debt owed by the husband.  They brought their case to the Tax Court, which dismissed it for lack of subject matter jurisdiction.  We affirm.

## I. Background

As part of a reorganization of his business under Chapter 11 of the Bankruptcy Code, confirmed in 2001, appellant Kenneth B. Boyd entered into an agreement with the United States to pay off delinquent employment taxes in a series of installments over five years. Two years later, the IRS notified Boyd and his wife, Marie, that their personal income tax overpayment of $6,549 for the year 2002 had been applied to that outstanding business tax liability. The Boyds filed a protest, and the IRS agreed to refund Marie the portion of the overpayment attributable to her income – $51.

Boyd then filed an administrative request for a refund of the remaining portion of the overpayment, arguing, inter alia, that the IRS improperly failed to provide prior notice and opportunity for a hearing before seizing his overpayment. The IRS Office of Appeals rejected his request, stating that a "[r]efund offset[]" is not considered a collection action subject to the procedural protections Boyd claimed the agency had violated.

The Boyds next took their complaint to the Tax Court, arguing that a provision added to the Tax Code in 1998 manifested Congress's intent that offsets be effected by means of a formal "levy" and that, therefore, they were wrongly denied the notice and opportunity for a hearing specified for levies in 26 U.S.C. § 6330. They invoked jurisdiction under section 6330(d), which gives the Tax Court authority to review a "determination" made by the IRS

Office of Appeals following a hearing on a taxpayer's challenge to an impending levy.

The Tax Court declined to address the merits of the Boyds' claim – i.e., whether offsets are subject to levy procedures – on the ground that it lacked jurisdiction. See Boyd v. Comm'r, 124 T.C. 296, 302-03 (2005). The court ruled that, under § 6330, its jurisdiction was limited to instances in which taxpayers obtain the written "notice of determination" that is issued by the Appeals Office following a hearing. See 26 U.S.C. § 6330(d); Greene-Thapedi v. Comm'r, 126 T.C. 1 (2006); Lunsford v. Comm'r, 117 T.C. 159, 161, 164 (2001).[1] No such ruling had been issued, of course, because the Boyds had not been offered the opportunity for a hearing. The Tax Court further stated that it would lack jurisdiction even if it treated the offset notice that the Boyds did receive as a notice of determination because a Tax Court appeal must be filed within 30 days of the notice, and the Boyds filed their action beyond that date. See 124 T.C. at 303.

The Boyds then appealed to this court, renewing their substantive argument that the 1998 revisions to the Tax Code required the IRS to treat the disputed offset as subject to the levy procedural requirements. They claim they are entitled to

---

[1] In an unpublished opinion, this court has upheld the Tax Court's conclusion that "its jurisdiction under § 6330(d) depends upon the issuance of a valid notice of determination by the IRS's Office of Appeals and the filing of a timely petition for review." See Rudd v. Comm'r, 91 Fed. Appx. 699 (1st Cir. 2004).

either an order directing the Secretary of the Treasury to issue a notice of determination, allowing them to meet the jurisdictional requirements of the Tax Court and thus to challenge the offset in that venue,[2] or a remand to the Tax Court for further proceedings notwithstanding their failure to meet the technical jurisdictional requirements.

We first address the Tax Court's jurisdictional ruling and then explain why that decision is also correct as a matter of substantive law.

## II. Discussion

### A. Jurisdiction

The Boyds complain that the Tax Court's dismissal of their case based on the lack of a "determination" by an IRS appeals officer turns the statutory right to due process on its head in cases where, as here, the taxpayers' claim is that the IRS improperly denied them the process that would have led to a determination – and thus to subject matter jurisdiction in the Tax Court. It cannot be, they assert, that the IRS may negate Congress's grant of jurisdiction by withholding the very process

---

[2] In his brief, Kenneth Boyd acknowledges that, technically, his appeal should be heard by the district court because of the type of tax involved, but he seeks a remand to the Tax Court for such a determination, which would give him thirty days to file his appeal with "the correct court." See 26 § 6330(d)(1) (providing that an appeal from a notice of determination is to the Tax Court, unless the Tax Court "does not have jurisdiction of the underlying tax liability," in which case the appeal is to a federal district court).

that is designed to give taxpayers fair opportunity to challenge the agency's decision-making. Consequently, they maintain that the Tax Court must have jurisdiction to consider their claim.

While this argument has equitable appeal, the Boyds offer us no authority for equitably expanding the Tax Court's jurisdiction. Indeed, the law seems to be to the contrary. See, e.g., Comm'r v. McCoy, 484 U.S. 3, 7 (1987) (per curiam) ("The Tax Court is a court of limited jurisdiction and lacks general equitable powers."); Bokum v. Comm'r, 992 F.2d 1136, 1140 (11th Cir. 1993) ("[T]he Tax Court has no equitable power to expand its statutorily prescribed jurisdiction."); Offiler v. Comm'r, 114 T.C. 492, 498 (2000) ("This Court's jurisdiction under section 6330(d) is dependent on the issuance of a valid notice of determination and a timely petition for review."); cf. Meadows v. Comm'r, 405 F.3d 949, 953 (11th Cir. 2005) (per curiam) ("[I]t is unclear whether or not the Tax Court has . . . equitable power" to "expand its statutorily prescribed jurisdiction.").

The Boyds' assertion that jurisdiction must exist in the Tax Court as part of the section 6330 scheme would be more persuasive if the IRS's conduct here were otherwise unreviewable. The Boyds were not, however, without a remedy. As the government suggested at oral argument, the Boyds could have sought a refund of their overpayment in district court based on their contention that the IRS seized the funds improperly when it failed to utilize the

requisite levy procedures.  See 28 U.S.C. § 1346(a) ("[D]istrict courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . ."); 26 U.S.C. § 7422(d) ("The credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability . . . ."). If the Boyds had succeeded with such a claim and secured the right to a refund, the IRS would then presumably have had the option to again seek an offset – but only by following the statutory levy procedures.

We recognize that such a multi-step process is imperfect and inconvenient, and it would be troubling when imposed on taxpayers with strong claims of entitlement to the pre-seizure procedural protections Congress sought to provide through section 6330. This, however, is not such a case.  As we explain below, examination of the merits of the Boyds' argument leads to the same jurisdictional outcome.  While our previous discussion arguably is sufficient to resolve the case, we think it advisable to address alternatively the post-1998 status of offsets to dispel any inference of "arbitrary administrative action" that might favor a different outcome.  Cf. Robinson v. United States, 920 F.2d 1157,

-7-

1161 (3d Cir. 1990) (allowing suit to proceed in Tax Court, even though IRS failed to send out prerequisite notice of deficiency, to "preserve[] the options granted to the taxpayers and [to] grant[] them the means, perhaps not otherwise available, to correct an arbitrary administrative action").

B. <u>Offset vs. Levy</u>

The parties appear to agree that, before the Tax Code revisions of 1998, the IRS generally had the authority, under 26 U.S.C. § 6402,[3] to offset a taxpayer's outstanding tax liability with any subsequent overpayment owed to the taxpayer, and that the IRS was not expected to obtain a formal levy in order to do so.[4] Section 6402 requires neither notice nor a hearing – nor any other procedural prerequisite – for effecting an offset.

---

[3] Section 6402(a) provides, in pertinent part:

> In the case of any overpayment, the Secretary . . . may credit the amount of such overpayment . . . against any liability in respect of an internal revenue tax on the part of the person who made the overpayment . . . .

[4] The Boyds do maintain, however, that the validity of the offset in this case, even pre-1998, would have been questionable because of two distinguishing factors: first, the overpayment was jointly owed to Kenneth and Marie but the earlier liability was Kenneth's alone; and second, Kenneth had arranged to pay his earlier debt through an installment plan. Neither of these, however, would have affected the offset of Kenneth's portion of the overpayment. Although the Commissioner usually is barred from levying when an installment agreement is in effect, that prohibition does not apply to offsets under section 6402. <u>See</u> 26 U.S.C. § 6331(k)(3)(A). The IRS acknowledged that Marie's pro-rata share of the overpayment should not have been seized and refunded it during the administrative process.

By contrast, as we have noted, the statutory provisions governing levies require the Commissioner to give the taxpayer thirty days' advance notice of the intent to levy, see 26 U.S.C. § 6331(d), an opportunity for a hearing before an IRS appeals officer, id. §§ 6330(a) & (b), and a decision – or "determination" – following such a hearing that may be appealed within thirty days to either the Tax Court or a district court, depending upon the type of tax at issue, id. §§ 6330(c) & (d).

Although the notice requirement has been in place for some time, section 6330's hearing and appeals procedures were added to the Tax Code as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3401, 112 Stat. 685. Section 6331 also was revised at that time, and the Boyds cite one particular change in that provision to support their contention that the Act eliminated the procedural differences between offsets and levies and requires that offsets by effectuated by means of the levy procedures.

The provision on which they rely, § 6331(i)(3)(B)(i), provides an exception to the prohibition against imposing a levy when proceedings are pending for the refund of "divisible" taxes, which include employment taxes; it states that the prohibition does not apply to "any levy to carry out an offset under section 6402."[5]

[5] Section 6331(k)(3)(A) contains a similar prohibition and exception that applies when an installment plan is in effect.

-9-

The Boyds argue that this phrase signals that a levy is now a procedural prerequisite for an offset.

The Boyds have read far too much into the language of § 6331(i)(3)(B)(i). The language does not state that an offset must be effected by means of a levy, and nowhere in the statutory amendments did Congress indicate an intention to erase the long-standing distinction between the informal offset and the more regulated levy by requiring that offsets now all be accomplished by means of the levy procedures. We think it unimaginable that Congress would have made such a significant change offhandedly in the provision governing levy procedures without explicitly recognizing that change in § 6402 – the provision that directly addresses the IRS's authority to credit overpayments against prior tax liabilities. Moreover, § 6331(i)(3)(B)(i) is an exception to a prohibition against imposing levies in particular circumstances, distinguishing a "levy to carry out an offset" as warranting less protection than the standard levy. Given the absence of language in § 6402 and the limiting role it plays in section 6331, subsection (i)(3)(B)(i) simply cannot bear the weight the Boyds assign to it.

Indeed, in context, Congress's attention to the status of a "levy to effect an offset" is fully consistent with an intent to reinforce the differences between the two types of collection actions. The government's attorney at oral argument confirmed what

our case law also reveals – that offsets are at times effected by means of the more protective levy procedures even though the law does not require such precautions.

In P.J. Keating Co., 805 F.2d at 452, we accepted as a "truism" that "the IRS often proceeds against [property in the hands of a government agency] by serving a formal notice of levy upon the other agency," and ruled that "the action of the IRS in serving a notice of levy upon another federal agency does not magically transform a traditional set off by the federal government into a levy." See also United Sand and Gravel Contractors, Inc. v. United States, 624 F.2d 733, 736 (5th Cir. 1980) ("[I]t has been an established practice of the I.R.S., recognized by the courts, to proceed against property in the hands of other federal agencies by a formal levy rather than by set off.").[6] With that background in mind, § 6331(i)(3)(B)(i) is most reasonably understood as Congress's attempt to ensure that traditional offset actions remain

_____

[6] In United Sand and Gravel, the Fifth Circuit concluded that, in a case where the IRS served a formal notice of levy on funds owed to a taxpayer by the United States Corps of Army Engineers, the statutory levy scheme was applicable; the court noted that section 6331(a) "contains no implied exclusion for property in the hands of a federal agency." See 624 F.2d at 737. We disagreed with this conclusion in P.J. Keating, stating that "a government agency's transfer to the IRS of funds owed to a delinquent taxpayer should properly be characterized as a set off by the federal government even if the transfer occurs pursuant to a formal notice of levy." See 805 F.2d at 452-53. Thus, we ruled, "no cause of action for wrongful levy exists when the United States simply sets off an amount owed to a taxpayer against that taxpayer's accrued liability." Id. at 453.

distinct – even when accomplished by means of a levy – and are <u>not</u> generally subject to the new procedural protections for levies. The Tax Court adhered to that distinction in <u>Bullock</u> v. <u>Comm'r</u>, 85 T.C.M. (CCH) 737 (2003), 2003 WL 43374 (U.S. Tax Ct.), holding that the Commissioner's authority under section 6402 to credit an overpayment to offset the taxpayer's liability for another taxable year is not a levy action subject to section 6330.

In sum, we are unpersuaded that the procedural differences between levy and offset have been eliminated, and the Tax Court's jurisdictional ruling thus had no adverse impact on the Boyds' substantive rights.

<u>Affirmed.</u>